UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO REEVES,

               Plaintiff,

v.

                                    Case No. 2:17-cv-13591
                                    District Judge George Caram Steeh
                                    Magistrate Judge Anthony P. Patti

MICHAEL EAGAN, BARBARA
SAMPSON, L. SCHNEIDER,
T. WAKLEY, ABIGAIL
CALLEJAS, JEROME WARFIELD,
MELISSA JENNINGS, and HEIDI
WASHINGTON

               Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING MDOC
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 14)**

**I.**    **RECOMMENDATION**: The Court should grant the MDOC Defendants'

motion for summary judgment (DE 14).

**II.**    **REPORT:**

    **A.**    **Background**

    Plaintiff Antonio Reeves (#341005) is currently incarcerated at the Michigan

Department of Corrections (MDOC) Parnall Correctional Facility (SMT), in

Jackson, Michigan. (DE 1); s*ee* www.michigan.gov/corrections, "Offender

Search." At the time giving rise to the allegations in the complaint, Plaintiff was

incarcerated at the MDOC's Cooper Street Correctional Facility (JCS), in Jackson,

Michigan.  (*See* DE 1.)   The Defendants are MDOC Director Heidi Washington,

Michigan Parole Board Chairperson Michael Eagen, Parole Board members

Barbara Sampson, Jerome Warfield, Abigail Callejas and Melissa Jennings,

Department Analyst Larry Schneider, and Department Manager Tamara Wakley

(the "MDOC Defendants").

Plaintiff alleges that while on parole, and after he informed a woman he had

been dating, Emilia Ghersi, that "he no longer wanted to be involved with her," she

filed a false police report alleging that Reeves "pulled her hair, grabbed her arm,

and hit her face."  (DE 1, ¶ 1.)  Plaintiff states that his first trial based on this

incident ended with the jury being unable to reach a verdict and his second trial

resulted in an acquittal.  (*Id.* ¶ 2.)  However, Plaintiff was subsequently found

guilty of violating the conditions of his parole at an administrative hearing for

allegedly "engaging in behavior that was assaultive, abusive, threatening and/or

intimidating by assaulting Emilia Ghersi" and, according to Defendants, was

transferred to the Muskegon Correctional Facility (MCF) in July 2016.  (*Id.* ¶¶ 3-4;

DE 14 at 10.)

At his subsequent Parole Board interview, on October 25, 2016, Parole

Board members Callejas and Warfield issued Plaintiff a parole denial and 18-

month continuance as a result of being found guilty of the parole board violation.

2

(DE 1, ¶ 4.)  Plaintiff states that he wrote to Parole Board Chairperson Eagen and requested reconsideration of that decision, but that Eagen did not respond.  (*Id.*)

After completing domestic violence classes, Plaintiff received his next scheduled parole interview and consideration on June 6, 2017.  (*Id.* ¶¶ 5-6.)  Parole Board members Warfield and Jennings issued Plaintiff a second parole denial and a 24-month continuance, in an order mailed on June 21, 2017.  (*Id.* ¶¶ 6-7.)  Plaintiff alleges that there was inaccurate information in his file indicating that he had a long history of substance abuse and past failures in juvenile programs, and that this information was used in the decision to deny parole.  (*Id.* ¶ 7.)  Plaintiff alleges that he did not have an opportunity to rebut this information because it was not brought to his attention prior to the decision being made.  (*Id.*)  Rather, he only became aware of this inaccurate information when he received his parole board notice of decision (CFJ-279 form).  (*Id.*)  Plaintiff states that he wrote Chairperson Eagen about the inaccurate information in his file, requesting that it be removed, but that he did not receive a response.  (*Id.*)

On July 10, 2017, Plaintiff filed a grievance, JCS-2017-07-0518-16D, complaining that Defendants Jennings and Warfield violated his "5th Amendment rights" by using inaccurate information as the basis for denying him parole, and he requested that the inaccurate information be removed from his file and a new hearing provided.  (DE 1, ¶ 7; DE 14-3 at 8.)  During the investigation of that

grievance, Analyst Schneider determined that the information was inaccurate and removed the statements from the Notice of Decision.  (DE 14-3 at 9.)  An Amended Parole Board Notice of Decision that did not contain the two inaccurate statements was issued on July 20, 2017, but the Amended Notice did not change the date of Plaintiff's next parole consideration.  (DE 1, ¶ 7; DE 14-3 at 9, 12-14.) The Amended Notice listed numerous "reasons in support of parole board action" including details of the nature of the crime, Plaintiff's criminal history and prior post conviction corrections history, and program involvement.  (DE 14-3 at 12-14.) The Step I grievance response stated that "Grievant's parole interview and process was done in accordance with PD-06.105.104 Parole Process" and that the grievance was resolved.  (DE 14-3 at 9.)  Department Manager Wakley signed the Step I grievance response as a "Reviewer."  (*Id*.)

On August 22, 2017, Plaintiff's Step II appeal was denied by Parole Board member Sampson because "[t]he issue indicated in the grievant [sic] step-I grievance was appropriately addressed."  (DE 14-3 at 6-7.)  On September 27, 2017, Plaintiff's Step III grievance appeal was denied by Richard D. Russell.  (*Id.* at 4-5.)

Plaintiff alleges that on September 5, 2017, he filed a request for a declaratory ruling from MDOC Director Washington.  (DE 1, ¶ 8.)  According to Plaintiff, he received correspondence reporting that his request had been received

4

and that if he did not receive a ruling within 30 days, he should consider his request denied.  (*Id.*)  Plaintiff states that he did not receive a ruling.  (*Id.*)

Plaintiff sued all Defendants in their individual and official capacities for violation of his Fourteenth Amendment due process rights, seeking declaratory and injunctive relief.

### B.    The Instant Motion

Judge Steeh has referred this case to me for pretrial matters.  Currently before the Court is the MDOC Defendants' February 27, 2018 motion for summary judgment, and Plaintiff's March 30, 2018 response.  (DEs 14, 24.)  Defendants argue that Plaintiff did not exhaust his administrative remedies as to his claims against Defendants Washington, Eagen, Sampson, Callejas, Schneider or Wakley because those individuals were not named in the only grievance appealed through Step III of the grievance process.  Defendants also argue that Plaintiff fails to show that Defendants Washington, Eagen, Sampson, Callejas, Schneider or Wakley were personally involved in the complained-of acts, but instead merely claims that these Defendants did not rectify the particular situation when brought to their attention. Defendants further argue that Plaintiff's allegations that Defendants Warfield and Jennings relied on inaccurate or false information in determining whether he should be granted parole status fail to state a constitutional due process claim.

5

Finally, Defendants argue that Plaintiff's claims are barred by the Eleventh Amendment and qualified immunity.

On March 30, 2018, Plaintiff filed a seven-page response to Defendants' motion for summary judgment.  (DE 24.)  He summarily asserts, without any support, that he has exhausted all administrative remedies and made a clear showing that each named defendant was personally involved in the activity that forms the basis of this complaint.  He also claims that he has since filed an additional grievance on March 12, 2018, naming all Defendants, SMT-18-03-378-28A, and that while this grievance was rejected on March 13, 2018[1] as duplicative of his prior grievance, JCS-17-07-0518-16D, he nevertheless has requested a Step II grievance appeal.  Plaintiff further argues that Warfield and Jennings violated his constitutional due process rights when they relied on inaccurate information to deny parole.

### C.    Standard of Review

#### 1.    Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

---

[1] The Step I grievance response form and rejection letter for SMT-18-03-378-28A, embedded in Plaintiff's response brief, is actually dated March 20, 2018.  (DE 24 at 4-5.)

56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .  [T]here must be evidence upon

7

which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

The fact that Plaintiff is pro se does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment

8

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a pro se plaintiff because he "failed to present

any evidence to defeat the government's motion").

## 2. Exhaustion of Administrative Remedies

### a. Exhaustion Under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison

conditions under section 1983 of this title, or any other Federal law . . . until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Congress enacted this provision to address the "outsized share" of prisoner

litigation filings and to ensure that "the flood of nonmeritorious claims does not

submerge and effectively preclude consideration of the allegations with merit."

*Jones*, 549 U.S. at 203.  Put another way, the purpose of § 1997e(a) is to "reduce

the quantity and improve the quality of prisoner suits."  *Porter v. Nussle*, 534 U.S.

516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to

correct its own mistakes with respect to the programs it administers before it is

haled into federal court, and it discourages disregard of [the agency's] procedures."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citations

omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).  The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .").  However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint and add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).  Moreover, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust

10

administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

When feasible, the Court will decide exhaustion disputes before addressing the merits of the claims. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). However, § 1997e(c)(2) allows a court to dismiss a claim on the merits despite a prisoner's failure to exhaust his administrative remedies. 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."); *see also Bowen v. Cady*, No. 09-10414, 2010 WL 148843, at *3 n.2 (E.D. Mich. Jan. 13, 2010) ("Although [§ 1997e(c)(2)] directly addresses a claim for relief that fails to state a claim on its face, it is equally applicable where the case has already progressed to the summary judgment stage."); *see also Williams v. Moore*, 34 F. App'x 475, 476 (6th Cir. 2002) ("exhaustion does not need to be considered where the claim fails to state a claim upon which relief can be granted."). A dismissal for failure to exhaust administrative remedies, even when decided on summary judgment, is without prejudice. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004).

11

**b.     Grievance Procedures at the MDOC**

Pursuant to its Policy Directive 03.02.130, dated July, 9, 2007, the administrative remedies available at the MDOC are as follows.  First, the inmate must attempt to resolve any issue with the staff member involved within two business days of becoming aware of a grievable issue.  (DE 16-2, ¶P.)  If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form.  (*Id.*)  "Dates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* at ¶R.)  The inmate should receive a response within fifteen business days of filing the grievance.  (*Id.* at ¶X.)

If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (*Id.* at ¶ BB.)  As with Step I, a response to the Step II grievance should be issued within fifteen business days.  (*Id.* at ¶CC.) Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the response was due, he or she may file a Step III grievance.  (*Id.* at ¶ FF.)  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

12

### D.     Discussion

For the following reasons, the Court should grant the MDOC Defendants'

motion for summary judgment.

### 1.     Defendants are Entitled to Summary Judgment on Plaintiff's Due Process Claims

Plaintiff claims that Defendants Warfield and Jennings relied on inaccurate

or false information in reaching their decision to deny him parole status on June

21, 2017.  (DE 1, ¶¶ 6-7, Counts VI & VII.)  Defendants argue that even if that is

true, Plaintiff fails to state a viable Fourteenth Amendment claim because there is

no liberty interest in being paroled, and Plaintiff cannot show that the false

information was relied upon to a constitutionally significant degree.  (DE 14 at 23.)

Plaintiff asserts in response that he has a liberty interest in accurate and true

information being used at his parole board hearing, and that Defendants Jennings

and Warfield violated his "5th Amendment rights by using inaccurate information

as the basis to deprive [him] of [his] liberty."  (DE 24 at 3.)

To establish a procedural due process violation, a plaintiff must prove that

(1) he was deprived of a protected liberty interest or property interest, and (2) such

deprivation occurred without the requisite due process of law.  *Club Italia Soccer*

*& Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006);

*see also Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006).  A plaintiff's

complaint that a defendant's actions led to his parole denial fails to raise a claim of

13

constitutional magnitude because he has no liberty interest in being released on parole.  *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (explaining that there is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law *entitles* an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).  The Court of Appeals for the Sixth Circuit and the Michigan Supreme Court have both held that there exists no liberty interest in parole under the Michigan system.  *See Wershe v. Combs*, 763 F.3d 500, 506 (6th Cir. 2014) ("Michigan's parole system creates no legitimate claim of entitlement to parole, and thus no liberty interest in parole.") (internal quotation marks omitted); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) (explaining that Michigan's parole scheme does not create a protected liberty interest in parole because the Michigan Parole Board has broad discretion to recommend or deny parole); *Glover v. Mich. Parole Bd.*, 460 Mich. 511, 596 N.W.2d 598, 603-04 (1999) (same).

14

Further, courts have consistently held that inaccurate information placed in an inmate's file does not amount to a constitutional violation based on denial of parole status.  *See Caldwell v. McNutt*, 158 F. App'x 739, 740-41 (6th Cir. 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, 111 F. App'x 415, 417 (6th Cir. 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation).

Plaintiff's claim here, that Defendants violated his constitutional rights because parole board members relied on inaccurate information to deny him parole status on June 21, 2017, thus fails to state a constitutional due process claim with regard to his parole decision, and Defendants are entitled to summary judgment.

## 2.   Eleventh Amendment and Qualified Immunities

Plaintiff has sued all Defendants, each of whom is a state employee, in both their individual and official capacities.  (DE 1 at Counts I-VIII.)  Defendants argue that Plaintiff's claims against them in their official capacities are barred by the

Eleventh Amendment, and that they are protected by qualified immunity from Plaintiff's claims against them in their individual capacities.  (DE 14 at 24-27.) Plaintiff's only response is that "Defendants did not act reasonable [sic] and violated Plaintiff's clearly established constitutional rights."  (DE 24 at 6.)

### a.    Eleventh Amendment immunity

"A suit against a public official in his official capacity is deemed to be a suit against the governmental entity, or a suit against the official, personally."  *U.S. ex rel. Diop v. Wayne Cty. Cmty. Coll. Dist.*, 242 F.Supp.2d 497, 516 (E.D. Mich. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  "In general, [s]tate governments and entities that can be considered arms of the state are immune from suits for *money damages* under the Eleventh Amendment. Specifically, the Eleventh Amendment bars § 1983 suits seeking *money damages* against states and against state employees sued in their official capacities." *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (emphasis added, quotation marks and citations omitted).  It does not appear that Plaintiff seeks money damages here, but instead he seeks only seeks declaratory and injunctive relief. (*See* DE 1 at 10, "Conclusion and Relief Requested.")  Therefore, Eleventh Amendment immunity is not at issue here.

### b.    Qualified immunity

Defendants assert they are entitled to qualified immunity.  The Court conducts a two-step analysis in assessing qualified immunity. First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury,* 567 F.3d 302, 309 (6th Cir. 2009).  While the defendant bears the initial burden of presenting facts that, if true, would entitle them to immunity, the ultimate burden of proof falls on the plaintiff to show that the defendant violated a right so clearly established that any official in defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct.  *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996).

Considering the facts of this case, particularly Plaintiff's failure to show that he had a cognizable liberty interest, it would appear that Defendants are entitled to qualified immunity since there is not a violation of a constitutional right. Accordingly, Defendants are also entitled to qualified immunity on Plaintiff's claims against them.

### 3. In addition, Plaintiff has Failed to Establish Personal Involvement by Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley

Defendants also argue that Plaintiff has not sufficiently alleged personal involvement of Defendants Washington, Eagen, Sampson, Callejas, Schneider and

Wakley in the activity that forms the basis of this complaint, and that his claims against those defendants should be dismissed. Rather, Defendants argue, Plaintiff merely alleges that these defendants failed to act, denied his grievances, or failed to respond to his requests for review. In response, Plaintiff summarily contends that he has made a showing that each named defendant was personally involved in the activity that forms the basis of his complaint, but does not more specifically respond to Defendants' motion.

In analyzing a case under § 1983, "each defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). "*Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Instead, liability under § 1983 "'must be based on more than ... the right to control employees.'" *Comstock v. McCrary*, 273 F.3d 693, 712-13 (6th Cir. 2002) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Specifically, the United States Court of Appeals for the Sixth Circuit has addressed the requirements for supervisory liability to attach under § 1983 as follows:

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official *at least implicitly authorized, approved, or knowingly acquiesced* in the unconstitutional conduct of the offending officers."

*Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cty., Ky.*, 688 F.2d 869, 874 (6th Cir. 1982) (emphasis added)); *see also Siggers v. Campbell*, 652 F.3d 681, 695 (6th Cir. 2011) (upholding the dismissal of a prison warden for lack of personal involvement even where the warden may have applied a prison policy incorrectly); *Sanders v. Mich. Dep't of Corr.*, No. 11-cv-12563, 2011 WL 4852269, at *3 (E.D. Mich. Oct. 12, 2011) (dismissing § 1983 claims against Heyns where the plaintiff did not "allege any facts which indicate that Director Heyns personally or intentionally violated his constitutional rights.").

Liability under § 1983 must be based on active unconstitutional behavior. *Shehee*, 199 F.3d at 300.  A supervisory official's awareness of alleged illegal conduct after the fact does not provide a basis for imposition of liability under § 1983, *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D. Mich. 1989), and merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983.  *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  It is well-settled that where a defendant's only role in an action "involve[s] the denial of an administrative grievance or the failure to act ... [he or she] cannot be held liable under § 1983." *Shehee*, 199 F.3d at 300; *see also O'Brien v. Mich. Dep't of Corr.*, No. 14–1132, 2014 WL 7533852, at *2 (6th Cir. Oct. 17, 2014) (concluding that a defendant's denial of an administrative grievance was "insufficient to show personal

19

involvement in the alleged unconstitutional conduct as required to state a claim under § 1983"); *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) ("[T]he denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983."); *Thompson v. Stapleton*, 403 F. App'x 986, 986–88 (6th Cir. 2010) (concluding that denial of an administrative grievance appeal at step II was not actionable under § 1983); *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *8 (E.D. Mich. Oct. 29, 2014) ("Sango's claims that the Oaks Defendants failed to properly investigate his allegations amount to nothing more than an alleged 'mere failure to act' for which § 1983 liability does not lie."), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).

Even if Plaintiff could establish a violation of his constitutional due process rights, he fails to allege active unconstitutional behavior by Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley. Plaintiff alleges that Defendant Eagen, Chairperson of the Michigan Parole Board, failed to respond to Plaintiff's letter requesting reconsideration of the parole board decisions and that the inaccurate information be removed from his file. (DE 1 at ¶¶ 4, 7, Count I.) He alleges that MDOC Director Washington failed to respond to his request for a declaratory ruling. (*Id* ¶ 8, Count VIII.) He claims that Defendant Sampson, a Parole Board member, responded to his Step II grievance and failed to provide a

20

new hearing. (*Id.* ¶ 7, Count II.)  Plaintiff claims that Defendant Callejas, a Parole

Board member, denied him parole status on October 20, 2016, but he does not

allege that Callejas had any involvement in the June 21, 2017 denial of parole

status at issue in this lawsuit.  (*Id.* ¶ 4, Count V.)[2]  The October 20, 2016 parole

decision was not included in the only grievance exhausted through Step III,

Grievance JCS-17-07-0518-16D, or any other grievance, and thus is not at issue in

this lawsuit.  Plaintiff alleges that Defendant Schneider removed the inaccurate

information from his file along with Defendant Wakley, but that in their Step I

grievance response, these defendants failed to provide a new parole hearing as he

requested in his grievance.  (*Id.* ¶ 7, Counts III & IV.)

Plaintiff thus merely alleges that Defendants Washington, Eagen, Sampson,

Schneider and Wakley denied his administrative grievances or otherwise failed to

act (and he does not allege that Callejas is involved at all in the June 21, 2017

denial of parole status). Therefore, even if Plaintiff could establish a violation of

his constitutional due process rights in this case, he fails to show Defendants

Washington, Eagen, Sampson, Schneider, Callejas and Wakley's personal

involvement in the alleged unconstitutional conduct at issue.  Accordingly,

Plaintiff's complaint fails to state a § 1983 claim against Defendants Washington,

---

[2] Plaintiff also complains about Warfield's participation in a parole decision on
October 25, 2016.  (DE 1, ¶ 4, Count VI.)

Eagen, Sampson, Callejas, Schneider and Wakley for this reason as well, and those claims should be **DISMISSED with prejudice**.

> **4.   Alternatively, Plaintiff Failed to Exhaust His Administrative Remedies as to His Claims Against Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley**

Alternatively, even if Plaintiff had stated a viable constitutional claim, Defendants have demonstrated that Plaintiff failed to properly exhaust his administrative remedies as to his claims against Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley.  Defendants establish that Plaintiff filed one Step III grievance appeal while incarcerated at JCS, prior to initiation of this action in November 2017.  (DE 14 at 17, referring to DE 14-3.)  In that grievance, JCS-17-07-0518-16D, Plaintiff complains that on June 21, 2017, Defendants Jennings and Warfield violated his "5th Amendment rights" by using inaccurate information in their decision to deny him parole status.  (DE 14-3 at 8.)  However, Plaintiff does not complain in that grievance that Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley were involved in that June 21, 2017 decision to deny him parole status.  (*See id.*)

The grievance policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and

> names of all those involved in the issue being grieved are to be
> included.

MDOC PD 03.02.130(R).  The MDOC grievance policy thus specifically requires

that the "names of all those involved in the issue being grieved are to be included"

and to identify "who" was involved in "the issue being grieved." Plaintiff failed to

do so here with respect to Defendants Washington, Eagen, Sampson, Callejas,

Schneider and Wakley.[3]  Thus, Plaintiff did not properly exhaust his administrative

remedies as to these defendants.  *See  Peterson v. Cooper*, 463 F. App'x 528, 530

(6th Cir. 2012) (because plaintiff did not name Embry and Huss in his grievance or

grievance appeal he attempted to file, he did not properly exhaust his claims

against these defendants); *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011)

(dismissing claim because plaintiff failed to name defendant in grievance in

violation of MDOC Policy Directive 03.02.130); *Sullivan v. Kasajaru*, 316 F.

App'x 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where

---

[3] Although Defendants Schneider, Wakley and Sampson are mentioned for the first time in Plaintiff's Step III grievance appeal, he does so only in the context of complaining about their responses to his Step I and Step II grievances. Accordingly, Plaintiff's claims against these three individuals remain unexhausted. *See Burley v. Mich. Dep't of Corr.*, No. 16-CV-10712, 2017 WL 877219, at *2 (E.D. Mich. Mar. 6, 2017) (claim against defendant named only at Step II of the grievance process not exhausted "[b]ecause grievances are defendant-specific and issue-specific, [and] they properly exhaust claims regarding a particular defendant insofar as the prisoner names that defendant and describes the specific conduct at *each* of the *three* grievance steps." (emphasis added)).

prisoner failed to follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved).

Plaintiff makes a conclusory assertion in his response that he exhausted all administrative remedies, but he does not specifically address Defendants' argument that he failed to name Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley in Grievance JCS-17-07-0518-16D, as required by MDOC PD 03.02.130.  He instead only alleges that on March 12, 2018—months after this lawsuit was filed and almost two weeks after Defendants' motion for summary judgment was filed—he did file an additional grievance at a different correctional facility, SMT-18-03-378-28A, and he contends that this grievance will serve to exhaust his administrative remedies against all Defendants.  However, that grievance was rejected as "duplicative to JCS-17-07-0518-16D."  (DE 24 at 4-5.) Plaintiff asserts in his unsworn response that he "ha[s] requested a Step II grievance so these named defendants to be [sic] added in this suit." (*Id.* at 2.) However, because Plaintiff failed to follow the proper procedures, this grievance, even if appealed through Step III, would not properly exhaust any of his allegations against the Defendants.  *See Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) ("As long as the state clearly rejects a grievance for the reason explicitly set forth in the applicable grievance procedure, 'a subsequent § 1983 claim based on the grievance will be subject to

24

dismissal for failure to properly exhaust.'"); *see also Woodford*, 548 U.S. at 97 (holding that when a prisoner files an untimely grievance and his grievance has been rejected by the prison as untimely, the claim is not "properly exhausted").

Accordingly, in the alternative, I recommend finding that Plaintiff has failed to exhaust his administrative remedies as to his claims against Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley, and to **DISMISS** those claims **without prejudice**.

### E.     Conclusion

For the reasons set forth above, I recommend the MDOC Defendants' motion for summary judgment be **GRANTED** and that Plaintiff's claims against all Defendants be **DISMISSED with prejudice** because Plaintiff has failed to establish a constitutional due process claim, and Defendants have established that they are entitled to qualified immunity.  Further, Plaintiff's claims against Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley should be **DISMISSED with prejudice** for the additional reason that Plaintiff has failed to demonstrate that these defendants were personally involved in the actions giving rise to this complaint.  Finally, and in the alternative only, I recommend that Plaintiff's claims against Defendants Washington, Eagen, Sampson, Callejas, Schneider and Wakley be **DISMISSED without prejudice** for Plaintiff's failure to exhaust administrative remedies as required by 28 U.S.C. § 1997e(a).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: June 13, 2018                    s/Anthony P. Patti
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE


### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on June 13, 2018, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti